# Muhlenberg *versus* The Philadelphia and Reading Railroad Company.

*Right of bondholder of Reading Railroad Company, to convert bonds into stock.*

Where, by the terms of a railroad bond, a period was fixed within which it might be converted into stock at the option of the holder, *held*, that an agreement for the extension of the time of payment before maturity of the bond did not extend the right of conversion after the time limited.

CERTIFICATE from the Court at *Nisi Prius*.

Henry H. Muhlenberg filed a bill in equity against The Philadelphia and Reading Railroad Company, setting forth that he was the owner of two bonds of the defendants, issued in 1844, payable July 1st 1860, secured by a mortgage; that there was a stipulation in them that the holder, at any time before July 1st 1860, should be entitled to convert the principal sum into the capital stock of the company, at the rate of $50 for each share, on surrendering the bond with the dividend warrants annexed; that before maturity, the company issued proposals to renew the loan, and the contract securing it; that among the inducements offered was this, that the holders should retain their bonds in the precise condition they were then in, the defendants proposing to extend them for twenty years; that one of the conditions or terms of the original contract was the right to convert and participate in the increased value of the corporate property; and that this, as well as all other stipulations, was included in the proposed extension; and that if it was not intended to be included, it should have been distinctly excluded; that with the proposal, the defendants sent a printed form for assenting, which the complainant signed and received the bonus; and that his bond was stamped as extended, and the coupons for future interest received; that defendants now refuse to comply with their agreement to issue stock in exchange for bonds, and declined doing so on demand. Praying for a decree compelling defendants to receive the bonds, and issue certificates for shares of their capital stock at $50 per share, as shall equal the amount of the bond and unpaid interest, &c.

The answer of defendants admitted that the complainant is the holder of two bonds issued by these respondents; that the copy annexed to the bill was a true copy thereof, and that they agreed as therein is expressed; that they may, if the complainant be thereto entitled, have authority to issue additional capital stock, but as the same was matter of law, they referred to their charter and the various supplements thereto, and submitted the same to the judgment and decree of this court; that a large

[Muhlenberg v. Philadelphia and Reading Railroad Co.]

number of bonds issued to raise money for the construction and completion of the said road became due and payable on the 1st day of July, A. D. 1860; that it was not then convenient for these respondents to make payment of the whole thereof, and they desired to obtain an extension of time for twenty years, from the holders thereof; that accordingly they issued and published in the newspaper, and in the form of a circular, addressed to the bondholders, a paper, a copy of which was annexed to the bill, which paper was accompanied by the opinion of counsel, and the form of the proposed contract; that at the time of the issue of the said circular, and at the time of the signing of the contract by complainant and other bondholders, as hereinafter mentioned, the market value of the stock was from $19 to $19.50 per share, nor was it nor could it have been anticipated that the market value thereof would increase as it has done, to the sum of $64.25 per share; but they denied that the right of conversion of the said bond into the capital stock of the company was or could have been deemed a right of any substantial practical value at that time; that the complainant, with a full knowledge of the facts set forth in the said circular, and of the terms of the agreement proposed for his signature, afterwards, viz., on the 31st day of January, A. D. 1860, came to the office of the said company, executed and delivered the contract mentioned, received the cash payment with the sheets of coupons referred to, and had his bond stamped; that the said contract, so sealed and delivered, was the final and binding obligation between the complainant and the respondents, and by the terms and provisions thereof they submitted that he and they are absolutely and exclusively bound; that by the terms of the said contract complainant is not entitled to convert the said bonds into the capital stock of the said corporation; that the value of the stock of the corporation respondent in the market is $57 per share, and that very large amounts thereof are sold and purchased in the full faith and belief that the extended bonds, such as those held by the complainant, are not entitled to the privilege of conversion; that bonds, such as those of the complainant, sell in the market for the sum of $110 for each $100 thereof, while the other bonds of the company, due and payable in the year 1886, and having the right of conversion, have sold and do sell for the price of about $120 for each $100 thereof; that they are ready and willing to do and perform whatever in equity or justice can be required of them, but believing that they are not in good faith bound to comply with the request of the complainant, and that it would be great injustice to those who have purchased other securities of the company as above expressed, they prayed to be hence dismissed with their reasonable costs.

The circular issued by the company was as follows:—

[Muhlenberg *v.* Philadelphia and Reading Railroad Co.]

" Office of the Philadelphia and Reading Railroad Co.
" January 1860.

" The holders of bonds of this company, due July 1st 1860, can now receive, upon application at this office, 10 per cent. in cash, upon the terms specified in the circular attached.

" The holders are also entitled to the benefit of a sinking fund of $140,000 per annum, as established by the stockholders at their annual meeting, held January 9th 1860, and in pursuance of the contract, entered into by the company and duly recorded, to carry the same into effect.

" S. BRADFORD, Treasurer."

" CIRCULAR.

" *Notice to the holders of Philadelphia and Reading Railroad Co. Mortgage Bonds, due July 1st 1860.*

" These bonds are secured by the first mortgages on the road, amounting in the aggregate to $3,308,400. The net revenue for the last fiscal year was six times the amount of the annual interest on these bonds.

" The managers propose to extend them for a period of twenty years, the holders retaining the bonds and the security of the mortgages in the precise condition in which they are now held. Fresh sheets of coupons for the interest, payable half-yearly, will be issued.

" A bonus of 10 per cent. will be given to the holders, in consideration of their assenting to the extension. This bonus will be paid in cash to the bearers of the bonds, on their signing a receipt and presenting their respective bonds at the office of the company, or to its agents, for endorsement.

" Forms of receipt and endorsement will be furnished on application.

" By order of the Board of Managers,
" W. H. McILHENNEY, Secretary."

The contract executed by complainant was in these words :—

" The undersigned, holder of $2000 of the bonds of the Philadelphia and Reading Railroad Company, due July 1st 1860, and numbered 126 and 1425, of $1000 loan, 1844–60, and secured by a mortgage, dated the 16th day of January, A. D. 1844, does, in consideration of the payment in cash of a sum equal to 10 per cent. of the amount of said bond, the receipt whereof is hereby acknowledged, hereby agree with said company, that if the interest upon the said bond shall be well and punctually paid, upon demand and presentation of coupons, that the time of payment of the principal of said bond shall be extended to July 1st 1880.

[Muhlenberg *v.* Philadelphia and Reading Railroad Co.]

"And the undersigned acknowledges to have received from said company, two sheets of half-yearly coupons or interest warrants, for the interest upon said bond, which will be due and payable from July 1st 1860, to the time to which they are hereby extended, and upon presentation of the appropriate coupons the interest is to be paid. If the interest thus payable is in default, the bond thereupon becomes due, and this extension void.

"Nothing herein contained shall prejudice, in any manner whatsoever, the security for the payment of said bond given by said mortgage.

"Witness my hand and seal, this 31st day of January, A. D. 1860.

"H. H. MUHLENBERG. [SEAL.]

Witness: "JOHN WALKER, Jr."

On hearing, the learned judge at Nisi Prius, without delivering any opinion, dismissed the complainant's bill; which was the error assigned.

*R. C. McMurtrie,* for appellant.

*St. George Tucker Campbell,* for appellees.

The opinion of the court was delivered, March 10th 1864, by

THOMPSON, J.—It was optional with the complainant, by the terms of the bonds, the subject of this bill, to have converted them into stock of the company any time before the 1st of July 1860. If the election were not made within this period, neither at law nor in equity could the company be compelled to submit to this conversion by reason of anything contained in the bonds. The option was for ever gone, and could only be renewed, or the right to exercise it, revived by virtue of a new contract. The time has long since elapsed within which the election could have been made without the right having been exercised, and the company refuse its exercise now. To compel them is the object of this proceeding in equity.

Neither in equity no more than at law, are courts at liberty to make contracts for parties. Their business is with the enforcement of those already made. The application to a court of equity to compel the specific performance of a contract, (which is this case), implies an obligation on part of the complainant to exhibit one entitled to be enforced. In this consists the difficulty here.

The contract of the plaintiff, accepted and acceded to by the company, is entirely silent on the subject of a right to convert his bonds into stock after the 1st of July 1860, or at any time between that and the 1st of July 1880. At the date of that

contract, it is quite apparent that such a right was considered of no value. The bonds were a much better investment than the stock, and human foresight was not keen enough to perceive what has since taken place—that out of disaster to the country would come prosperity to the company. This was not anticipated, and accounts undoubtedly for the fact that no provision was made on the subject. It is quite evident that the arrangements made, resulting in the contract between the parties, was with the single view of postponing the day of payment of the bonds for twenty years. To this expressly is the consideration of ten per cent. referred, together with the stipulation for the prompt payment of interest in future. The right of converting the bonds after the 1st of July 1860 rested, therefore, upon no consideration whatever, after the original consideration had exhausted its purpose by the lapse of time. On the face of the plaintiff's contract, this is the state of the case.

But it is claimed that the right is substantially asserted in the circular of the company, which was their proposal for extension. But the proposal is not accepted, or referred to in the plaintiff's agreement with the company, nor in any way made parcel of it. The contract is independent of it, and must, on every principle, be considered the final consummation of the bargaining between the parties; unless, indeed, it could have been shown that it ought to be reformed under some head of equitable interference, which was not attempted or pretended here. Had there been a simple acceptance of the proposal of the company by the complainant, there would have been more plausibility, at least, in the argument of his counsel. But that was not the case. The plaintiff fixed his own terms of acceptance, and he did so without the remotest reference to the proposal, and in it he clearly discloses both the object of the arrangement and the consideration for it.

This view renders unnecessary any extended discussion of the clause of the proposal relied upon by the plaintiff's counsel, and which he seems to think preserves the right of the plaintiff to convert his bonds into stock. That clause says the company "proposes to extend them (the bonds) for a period of twenty years; the holders retaining the bonds, and the security of the mortgage, in the *precise condition* in which they are now held." We have said that these terms were not accepted, but others better adapted to the plaintiff's own views, and this might be enough to say of it; but I doubt much if even accepted expressly, it would have the meaning attributed to it. It was unnecessary to stipulate that the holders should retain their bonds in the condition they were. That they would do without any stipulation, so far as form and obligation were concerned; but it was deemed material that the company should propose to hold the securities for their

eventual payment in the *precise condition* in which they were. I think this was what the clause meant. The loss, by lapse of time, of the right to convert the bonds into stock, would not change their "*precise condition.*" They would be precisely the same in form and substance as bonds with a term of satisfaction gone; and that this was not regarded is shown by the care with which it was thought necessary that the assurance should be given that the securities should be held intact. That this was what was understood by it, so far as the plaintiff is concerned, is plainly to be seen in what he chose to say in regard to this very matter himself. In speaking, in his contract, of the terms on which he agreed to hold the bonds in controversy, after stipulating for an extension for the consideration of ten per cent., and future prompt payment of interest, he adds: "nothing herein contained shall prejudice in any manner whatever the *security* for the payment of said bonds given by the mortgage." This was all he stipulated for, and he must be bound by it; and it accords exactly with what I conceive was meant in the circular. But whether or not, these are the terms of his acceptance, and no other, and he cannot enlarge or alter them. As we think the complainant is not entitled to the relief prayed, the decree at Nisi Prius, dismissing the bill, is affirmed.

Decree affirmed, at the costs of the appellant.

WOODWARD, C. J. was absent at Nisi Prius, and AGNEW, J., dissented.